And our next matter for argument this morning is Alcazar-Martinez v. Garland. Good morning, Your Honors, and may it please the Court. My name is Josephine Velazquez, and I, along with my co-counsel, Ms. Evangeline Abriel, represent the petitioner, Mr. Alcazar-Martinez. Your Honors, we respectfully request to reserve three minutes for rebuttal. Watch your time. Thank you. My co-counsel and I will be spending the remainder of our time speaking, approximately six minutes each. Mr. Alcazar-Martinez respectfully requests that this Court reverse the lower court's decision and remand his case back to the Board. Today I will be discussing the issue regarding equitable tolling. My co-counsel will discuss the issue on the Suez-Fonte reopening. Your Honors, in the case before us today, the Board was erroneous in determining that Mr. Alcazar-Martinez's motion to reopen did not warrant equitable tolling. And this is for two reasons. The first reason, Mr. Alcazar-Martinez did meet the legal standard for equitable tolling. Mr. Alcazar-Martinez pursued his rights diligently, and also there was a Let me stop you here. What should be the starting point for our due diligence analysis? Should we be looking at where do we start, the due diligence of the person at the moment the BIA issues its final decision, or should we be looking at it from an earlier time that the person should be due diligent from an earlier period of time? That's what I need to get an answer to. Yes, Your Honor. The government alleges the starting point is 2019, back with the conviction Mr. Alcazar-Martinez had. But that is erroneous. The starting point for this case should be the May 10, 2021 BIA decision in which that was the final administrative order in Mr. Alcazar-Martinez's case. In addition, according to Avagian V. Holder, the tolling starts, or in other words, the time starts when the non-citizen definitely knows about the harmful consequence or the error that happened in the case. What about... Oh, go ahead. Sorry. So, I mean, I think that's right. We've had a focus on what is the error, right? What is the reason why he thinks he's entitled to reopen his proceedings? Yes, Your Honor. What is that error? The error here was that Mr. Alcazar-Martinez, back in 2019, was under the reasonable inference that his conviction, his plea, excuse me, was an immigration-safe one. He relied on the advice of his then-private defense counsel, who stated on the record, which is on page 48 of this record, that it was an immigration-safe plea. Yeah. So I agree with you. I think that's right. That is the error and the basis why he wants to reopen. So then it seems to me under our test, our first part of the equitable tolling test is when would a reasonable person understand that that error happened? In this case, Your Honor, it would be until the May 10, 2021 decision, where Mr. Alcazar-Martinez had his removal proceedings commenced. We had the IJ decision back in December 2020, where the conviction was only a discretionary factor in that part. However, the conviction itself was not a statutory bar for him to pursue adjustment of status. It is even conceded by DHS back in the immigration court hearings that a 212-H waiver was not required. Therefore, upon having the IJ decision, Mr. Alcazar-Martinez with his then-counsel, Mr. Sobhati Faya, in a timely appeal to the Board of Immigration Appeals, they continue to argue that the 2019 conviction does not involve a crime involving moral turpitude. However, it wasn't until that board decision in May 2021 that Mr. Alcazar-Martinez definitely knows about the harmful consequences. Why can't we say that, what about the argument, I read the government to argue that, oh no, you were on notice at the moment that you got the notice that you're going to be removed from this country. Why isn't that the starting point? Because the NTA, as seen in the record, the removal ground stated there is unlawful presence. It does not have to do anything with the conviction. In simple terms, the conviction does not equal him to be removaled. It was due to the sole fact of being, having unlawful presence in this country. The conviction itself was just- Let me stop you here. Then what about the IJ decision? The IJ decision comes out and says, nope, the reason is the conviction. Why not start there? Because in the IJ decision, the IJ does know about the impact the conviction had in their discretionary analysis. That is correct, Your Honor. However, again, Mr. Ocasio-Martinez was under the impression that the 2019 conviction should have not produced immigration consequence. If we look further to the appeal that Mr. Soapty made on behalf of Mr. Ocasio-Martinez, they continue to argue that the conviction does not involve any moral turpitude. If we look at the IJ transcripts, Mr. Ocasio-Martinez himself talks about him not having abnormal sexual conduct. So for him, it was not a statutory bar for him to pursue the type of relief to which he was eligible for, statutory-wise. So by using the IJ decision, that itself is not a definite indicator to Mr. Ocasio-Martinez of the harmful consequences. It's not until the board's decision, where the board themselves, they know about the possibility of seeking post-conviction relief. Both the IJ and the board note the strong positive equities that Mr. Ocasio-Martinez has. He's been in this country since the age of two. He's gone to school here, attended a semester of college, has a daughter here. The IJ indicates that there are strong equities mitigating facts here. But again, could you tell me a little bit more about what demonstrates his due diligence in this case, even if the starting point is May? Yes, Your Honor. Due diligence can be seen, one, by pursuing any types of rights available to them, but also following the legal advice of counsel and following the normal judicial procedure as stated in Avagian. Here, upon getting the May 10th decision from the board, 17 days later, they seek post-conviction relief back in state court. And it isn't until July 2028 when that vacater is granted. Mr. Ocasio-Martinez continues to follow the legal advice of Mr. Sobti back then, and he continues to pursue any type of relief, which, starting from the May board decision, is seeking that post-conviction relief, Your Honor. And just to briefly touch on my second reason, Your Honor, it is unclear from the board's 2021 decision what was the time frame that the board utilized in coming to their decision. They note two timelines. On one hand, we have the approximate two years starting back in 2019, and on the other hand, we have the 90-day statutory deadline. However, we do not know if one reason isolated would have made the board come to the same decision. And for that reason, Your Honors, it is important for this case to be remanded back to the board in order for, one, the board to appropriately apply the equitable tolling standard in this case, and to, second, to tell this court exactly what was their isolated reasons for coming to their decision. And for these reasons, Your Honor, Mr. Ocasio-Martinez respectfully requests to reverse the lower court's decision. I'll pass it on to my co-counsel for the sua sponte. Thank you. Thank you. Good morning, Your Honors, and may it please the court. My name is Evangeline April, and I also represent Mr. Ocasio-Martinez. I would like to address today why this court has jurisdiction over the board's denial of sua sponte reopening, and why the board's decision to deny sua sponte reopening was in error. Normally, this court doesn't have jurisdiction to review a denial of sua sponte reopening because it's within the board's discretion, and there are generally no standards to apply in the review. However, this court has recognized an exception to this rule, and that is that the court will review a denial of sua sponte reopening for constitutional or legal error. And that is what we have here today. We have the board took three paragraphs in its decision to set out three reasons for why it was denying sua sponte reopening, and two of those reasons are error, and the third one is an abuse of discretion. Before I get to the three errors, I wanted to just briefly recap Mr. Ocasio's criminal case. So he has one conviction, and in that conviction, originally, there were two counts. One was for sexual abuse of a minor, and the other one was for false imprisonment. So the first count, the sexual abuse of a minor, was dismissed when Mr. Ocasio pled guilty to another, a third count, a newly added count of annoying or molesting a child. The second count was dismissed after preliminary hearing for insufficient cause. And now turning to the board's errors, one error was that the board relied on that first count, the sexual abuse of a minor, which was dismissed. And this was error for a couple of reasons. First, the board went against its own precedent, under which it doesn't go beyond the record of conviction to redetermine guilt or innocence of an individual, and that's essentially what it did here in looking at this first count that was dismissed. It was also error because both this court and the board have declined to give weight to charges that don't result in conviction unless there's some other corroboration. And we don't have any of that here. We don't have any police report on that first count. We don't have any criminal complaint. What's your authority for that? I'm sorry, Your Honor? What's your authority for that as a hard rule, that we don't, the board is not allowed to convicted conduct without corroboration? Your Honor, that is, the Board of Immigration Appeals itself has said that in Arequín de Rodríguez, and this court has referred to that and said the same thing in Abbas v. Lynch. What do we do with the other statements from the board, including that, here's a quote from one of its cases, Matter of Thomas, when an alien's conduct results in having had contact with the criminal justice system or being placed in criminal proceedings, the nature of those contacts and the stage to which those proceedings have progressed should be taken into account and weighed accordingly. There's nothing in there that says that the board is limited to only considering convicted conduct. That's correct, Your Honor, and the board is correct when it says that it can look at conviction, but that's actually not what it did here, because there are no facts about that first count. There's nothing in the record that tells you what, if anything, Mr. Acosta did in relation to that first count. So what the board has done is not look at unfavorable conduct, but look at an unfavorable charge. And so without any corroboration of that, of what conduct might have occurred, the board is now going against its own precedent and relying on something that really doesn't exist. Well, I mean, in that same decision of Matter of Thomas, it gives lots of examples from various cases about unconvicted conduct being considered. And some examples from those cases are a narcotics arrest, or that certain charges were placed on file even though they weren't ever brought to fruition. What's the difference between those kinds of scenarios and what happened here, if they're looking at charges that were brought, although ultimately not convicted on? Yes, Your Honor. I think if you look at each of those cases, there will be some corroboration. Either in some cases there's a conviction, but it's on direct appeal, but it's come to it, there's been a certain amount of information about it. In others, the person may have admitted something even in the removal proceedings, but we don't have any of that here. We have simply no facts at all to demonstrate what conduct relates to this count one. So we don't even know what he did. There's nothing at all about this count one in the record. Your Honor, I wanted to also discuss the Board's error in relying on a police report. So, and this police report is found at pages 723 to 729 of the administrative record. The Board, this was error for a number of reasons as well. The first one was that that police report relates to count two, the false imprisonment count, and this count was dismissed after preliminary hearing for lack of sufficient cause, meaning that the criminal judge found that there weren't enough facts to hold Mr. Alcacer to answer for this offense. So the fact that the count that stemmed from this police report was dismissed for insufficient cause throws that whole police report into disrepute. It no longer has the reliability that it should have in order to be considered. But perhaps a bigger problem with Cook looking at the police report is that it is, in effect, a new finding of fact. The immigration judge had also looked at this police report and found that Mr. Alcacer was not factually guilty of the charges in it, and this is, I believe, at page 442. You're contending that's a finding of fact? I beg your pardon, Your Honor? You're contending that that statement by the immigration judge was a finding of fact? Yes. When the judge finds, the immigration judge found that Mr. Alcacer-Martinez was not factually guilty. Why is that a finding of fact as opposed to just a recitation of the procedural reality? I mean, I'm not aware that immigration judges have the authority to make findings of fact on guilt. Your Honor, I don't know that it's necessarily a finding of fact on guilt, but the judge has already considered this report, and the board is making a factual finding on guilt. So they're making contradictory findings about the result of this police report. Whether or not the immigration judge had authority to make a finding on guilt, we now have the board making a finding on guilt, saying that Mr. Alcacer is essentially guilty of the acts in this police report. And actually, if we look at the police report, we can see that they're very vague comments. It's hard to tell what happened there at all. And the immigration judge wasn't making an ultimate finding of guilt, but he was taking that into consideration. And so he said, well, from what I see, he was not guilty, right? That's correct, Your Honor. And took that as part of his discussion of a range of factors. That's correct, Your Honor. And so the immigration judge did not take that police report into account in making his discretionary finding. Do you want to save any time for rebuttal? I do, Your Honor. Thank you very much. All right. Good morning, Your Honors. And may it please the Court, Michael Heiss on behalf of the Respondent, the Attorney-General of the United States. The board properly exercised its broad discretion here to deny Petitioner's untimely motion to reopen. Petitioner doesn't contest that the motion was not timely filed and required equitable tolling in order for the board to consider it. Congress imposed a 90-day deadline. It was a statutory deadline for motions to reopen. And in order to file beyond that deadline, Petitioner has to satisfy a two-part test for equitable tolling, which was discussed, but only one part of that was discussed here, and that's crucial because the board was never given any explanation as to the second part. Well, we could remand on that issue for the board to make that determination. But let's start with the due diligence. Where do you think the due diligence, what's the timeline for due diligence in your mind? I heard Your Honor's questions regarding what's the appropriate starting point. And the test is when a reasonable person would have definitive understanding that there was a problem. How would they know that if the immigration matter wasn't concluded? Well, concluded, that gets to reasonableness. What we have here is an individual that was put into removal proceedings almost immediately upon being detained, or I guess coming out of detention for his state conviction. Not on the, he wasn't charged with removability based on his crime, but he was charged with removability. And in those proceedings, almost immediately, the fact that he had a conviction and was going to be seeking adjustment of status relief, his conviction came up as a factor. But his NTA said one thing, right? His NTA was about entering illegally. Okay. And that's not what ultimately the IJ decided, correct? The IJ found that he was, he actually, Petitioner conceded his removability on that point. But he also, at this point, he needs relief from removal. So he's seeking adjustment of status, and that's discretionary. And the fact that he had a serious conviction was, it was immediately apparent during one of the very early hearings, I believe October 23rd, this is administrative record page 277, the parties are discussing the fact that he has this conviction. How is this going to impact whether or not he's able to adjust status? And that's eligibility or discretion, it's both. It's a factor at that point. So that should have perhaps lit a small fire, at least a spark. But as Your Honor mentioned, the immigration judge's decision, how is that not enough? He's been denied the relief he's seeking. How is that not time I should start doing something? That would be what a reasonable person at that point realized, I have a problem here. I can hope that the board is going to help me out. I can hope that my appeal is going to succeed. But I should probably start doing something, given that I have this conviction, and I could challenge it because I was told that I had, I would not face immigration consequences as a result of my plea. And here I have faced immigration consequences as a result of my plea. That's December 10th, 2020. And then you have the board's decision is... But why should they believe that? Why would a reasonable person think, okay, this is final. What if they think, a reasonable person would think, oh no, I think they made a mistake here, so that's why I'm going to appeal. And once I get a final decision from the board, then I'll know, I'll know in fact that this is, because they're the final determination of immigration law on the issue. Well, that's, again, this is the question of the board's discretion as to what is reasonable. And again, the board has wide discretion when adjudicating motions to reopen, including denying motions even if they... No, but I'm not talking about, I'm talking about what the individual, what's reasonable for the individual to believe. And wasn't it reasonable for the individual to believe that, hey, this decision, they're said guilty to this crime that I was told was immigration friendly. And now this I.J. has told me it's wrong. Why not wait for the board to confirm that's the case, then act, which is what happened here, correct? That's arguably an unreasonable risk. He's hoping for a positive result. He's hoping the board will see his side of things and didn't. Isn't that also just inconsistent with our test? I mean, our test has three parts. First, when is a reasonable person on notice that there's this error that they're going to need to rely on for reopening? Two, have you taken reasonable steps to figure out the error? Three, when did you definitively know the error exists? So the reasonable steps and inquiry has to happen before definitive knowledge, at least according to our test, or at least it comes into play before there's definitive knowledge, right? Right. It's all together. Again, it's a reasonable person standard. What would a reasonable person do? And when an immigration judge has denied you the relief you're seeking that is going to result in you having to leave the United States, a reasonable person would start doing something at that point. Would you have a bright, kind of a bright-line rule there, is that what you suggest? Not suggesting a bright-line rule, because this is all discretionary. It's all totality of the circumstances. It's an important factor. Well, it could be before, it could be after, depending on the facts of the case. Right. It doesn't have to always be at the IJ's decision. Say, for example, I mean, the court usually gives me the hypotheticals, but the immigration judge or counsel during the immigration court, the initial preliminary hearings, starts talking about, well, what did your lawyer say to you? What did your criminal attorney say to you? Do you realize that's wrong? Someone could have said that to him at that point. That didn't happen. He had counsel, so that counsel should have known that at that point. And again, this came up. This came up very early. This was 2019, where they're talking about possible consequences as a result of his conviction keeping him from getting the relief he's seeking, and he didn't do anything. Yes, he waited until he had the definitive answer from the board. That's the last part of the test, but the whole totality of the circumstances matters in terms of what would a reasonable person do. Can you imagine a case where a person would wait on the board's decision and still be found to have pursued things diligently? Can you imagine a case? I believe this court has those cases, and that's why the second part of this case matters the most, and again, about which Petitioner's counsel today has said nothing, because the second part of the test is what kept them from timely filing the motion to reopen. Had he timely filed the motion to reopen, we probably wouldn't even be talking about diligence. That's certainly within the realm of possibility here, but something had to keep this individual from satisfying the 90-day deadline, and he had the vacator of his state conviction 12 days prior to that deadline, and offered no argument to the board as to why he didn't satisfy that deadline, offered no argument to this court in their opening brief as to why they didn't satisfy that deadline. What if he missed by one day? Would you take a different position? 90 days is 90 days. Congress imposed that limit. That is a statutory limit, and in order to exceed that limit, the individual has to demonstrate that equitable tolling is warranted, and an equitable tolling standard requires that the motion be prevented by fraud, deception, or error of some kind. Petitioner's motion to reopen, in fact, acknowledged that he needed to demonstrate some kind of hurdle to filing. This is from Administrative Record, page 103. This is Petitioner's motion to reopen. Some extraordinary circumstance stood in the Petitioner's way and prevented timely filing. That is quoting Holland v. Florida, a Supreme Court case. The problem is that he didn't say that 11 days was a short period of time that I went to a lawyer. If a lawyer says, I'm on vacation, or I can't get it done, I've got to do the research, he didn't do that. He didn't say something. If he said something like that, maybe. Yes, maybe, but we have nothing, and the board can't simply walk over the second part of a two-part standard, nor can this court. There was, again, no explanation offered in the opening brief. The only explanation this court received was in the reply brief. If I remember right, the board never got to the second question. Is that right? No, that's incorrect. Administrative Record, page 3, I have it here, quote, he has not identified any circumstances that precluded him from meeting the statutory and regulatory 90-days deadlines. That's plain on its face. He needed to say something and didn't. He needed a lawyer. He has a lawyer. Your Honor, he had counsel throughout these proceedings. Even in that period of time? Yes. Yes. With respect to the sua sponte question, the board, this court has consistently, every court in the country, has consistently said that the board has, quote, unfettered discretion to deny sua sponte reopening. What might restore jurisdiction over that decision is extremely narrow, and it involves situations where the board has found that it lacked the sua sponte authority incorrectly, incorrectly believed it couldn't exercise sua sponte authority. That is not what the board did here. That has been made explicitly clear in Loma. That's, there it is, 958 F. 3rd at 1234. That exception is extremely limited, and the board's discretion over sua sponte opening again is What I understand their argument to be is how can they make a conclusion based upon just the conviction, not the facts underlying that or in support of that? That's what I see their argument to be. I understand. And this is, again, assuming the court has jurisdiction to reach this point. Right. I believe Judge Forrest was mentioning a matter of Thomas that explains that the board can consider these unconvicted conduct. The exceptions to that have come up where the individual has provided credible refutation that they engaged in that conduct. We have a finding here by the immigration judge, however, that completely disbelieved petitioner's explanation. So, we do not have a credible So, just with the, I'm sorry, just with the charge, just the charge itself, that would be sufficient for the board to make a decision based on that? Yes. So, I mean, I'm a little bit troubled by this issue, I'll have to say. When I read the BIA's decision, it seems like it is referencing the charge that was dismissed for insufficient evidence related to the bus, the school bus situation. Yes. Do you agree? Yes. How is that proper? When all you've got there is a police report and the fact that the court dismissed that charge for lack of sufficient evidence? Taken together with the fact that he was convicted of very similar conduct thereafter that actually predated that, those incidents, I believe the facts underlying his conviction are from 2012. The bus incident, if I remember correctly, is 2017. But not convicted of that? Of the bus incident? No. Do I understand your question? Yes. Yes. Yes. He was not convicted of the bus events. What's the best authority under those circumstances that the board could consider that at all? Again, it's the totality of the circumstances and the board's ample discretion to consider the facts before it. It crucially layered on top here that the immigration judge, the finder of fact, did not believe that he didn't do the acts that led to his 2012 conviction on nearly identical facts in terms of sexually abusing small children. So they're kind of retrying the old cases? Not retrying them. The agency cannot go behind documents to establish guilt or innocence. As Your Honor mentioned, the IJ is not in a position to be deciding whether or not someone is guilty or not. The IJ, in this case, with respect to that incident, was saying, I don't find, or found that he's not guilty is in reference to making sure that everyone knows the judge isn't considering that in terms of his adjustment of status eligibility. But what we're talking about here is the board exercising its, again, unfettered discretion whether or not to sua sponte reopen a case. That is a rarely exercised authority reserved for truly exceptional circumstances. That this court lacks jurisdiction to consider, save circumstances that aren't present here. But again, assuming the court can get to that, we have the board just looking at the totality of the circumstances. As an individual that the immigration judge didn't believe, the immigration judge did not believe this person, that they didn't do these things. And to give that person grace on top of grace, because adjustment of status is an act of grace granted by the Attorney General, there's no requirement. Maybe they believed it based upon a report on charges that were dismissed. I'm sorry? Maybe they didn't believe him based upon charges on a report that was dismissed. The immigration judge disbelieved this individual's explanation, explicitly disbelieved his explanation as to the basis for the 2012 conviction. The immigration judge did not consider guilt, that's what we're talking about, the guilt or innocence as to the bus incident. But the board here, again, exercising its ample discretion is considering everything, the record before it. As Your Honor was saying, that's not a fact-finding, it's just something that's in the record. It's a piece of record evidence. Trishner has previously questioned things like authenticity and reliability. This is a police report. And there... It is fact-finding, isn't it? I mean, the judge now is saying, going behind everything and saying, I see the facts as they've come before us, and I believe him, I believe he did this, I don't, you know, that's a factual determination. Again, given the board's wide discretion here, the similarity of the conduct, it's reasonable for the agency to review all available information when deciding whether or not to exercise an extreme act of grace that it has no obligation to grant, and that this court lacks jurisdiction to review. The court has no further questions. Thank you, Your Honors. Thank you, Counsel. All right. We'll give you a minute and a half for rebuttal. Thank you, Your Honors. I want to touch on two quick points regarding the equitable tolling analysis. Opposing counsel notes that the NTA should have been where they, quote, probably should have started doing something. That's what Mr. Alcazar did in this case. He had legal counsel. They went through the over-year-long amount of hearings at the immigration court level. They went ahead and timely appealed to the BIA, trying to rectify the situation, given that the conviction was a discretionary factor in the IJ's analysis. And it wasn't until May 10, 2021, with the board's decision, that Mr. Alcazar Martinez definitely knew about the harmful consequences his conviction had, but also the legal error that happened back in 2019 with the erroneous advice that his private defense counsel gave. On the second point, opposing counsel states that there is no explanation for the 90 days, why they didn't file within those 11 short days that happened after the vacuum was granted. It's important to note that for the analysis of equitable tolling, we're separate from the 90 days. The equitable tolling does not consider in its analysis why they didn't meet the 90 days. Rather, it's another test to see, to consider a motion to reopen timely when they surpass the 90 days. One, they must be diligent, and two, there must be some extraordinary circumstance, which we do have here. That itself is the vacator that was granted, and the board itself has noted that vacators are an extraordinary circumstance in Enray Javier Hector Plata Herrera, but even further than that, the proximity in which the vacator was granted to the end of 90 days. In any other case, this would have been expeditious work, but in this case, given the short amount of days, it would have been an adversity for Mr. Alcazar Martinez to bring forth a meritorious claim in front of the board. Thank you, your honors. All right, counsel, thank you so much for your argument in this case. It will be helpful to us as we resolve the issues. I also want to particularly note that we had pro bono counsel here on behalf of the petitioner, and I appreciate your willingness to take on representation in this matter and assist the court in resolving the matter.
judges: FORREST, MENDOZA, Oliver